UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IRTH SOLUTIONS, LLC,

                              Plaintiff,                    DECISION AND ORDER

-vs-                            18-CV-6884-FPG-MJP

APEX DATA SOLUTIONS AND SERVICES,
LLC (d/b/a "DigTix") and KYLE MURPHY,

                            Defendants.
_____

**Pedersen, M.J.** Plaintiff irth Solutions, LLC ("Plaintiff") commenced an action on December 6, 2018, against defendants Apex Data Solutions and Services, LLC, (d/b/a/ "DigTix") and Kyle Murphy ("Murphy") (collectively "Defendants"), alleging six causes of action, including a violation of the Defend Trade Secrets Act (18 U.S.C. §§ 1836, *et seq.*), misappropriation of trade secrets, tortious interference with contractual relations, unfair competition, unjust enrichment, and conversion.[1] (ECF No. 1.) Presently before the Court are Plaintiff's motion to compel (ECF No. 66) and Defendants' cross-motion to compel. (ECF No. 74.)

On April 14, 2020, the parties participated in a discovery conference with the Court. Prior to the conference, Plaintiff's counsel provided correspondence to the Court, dated April 13, 2020, which indicated that the parties had met and conferred and were able to resolve some of the issues raised in their motions to

---

[1] The last cause of action contained in Plaintiff's initial complaint is labeled the "Seventh Cause of Action," however, the complaint does not contain a claim labeled "Sixth Cause of Action." The proposed amended complaint has corrected this error and the Seventh Cause of Action is now Plaintiff's claim under the Computer Fraud and Abuse Act.

compel. (Corresp. from Brian M. Robinson to Hon. Mark W. Pedersen, ECF No. 95.) The correspondence outlined the remaining disputes between the parties. With respect to Plaintiff's motion to compel, two issues remain outstanding: (1) discovery with respect to Defendants' financial information; and (2) the identification/redaction of Defendants' customers. (ECF No. 95.) Two issues also remain unresolved with respect to Defendants' cross-motion to compel: (1) an issue involving Plaintiff's designation of its trade secrets as "Attorney's Eyes Only"; and (2) whether the communications and documents Plaintiff exchanged with one of its experts, Jeffrey Shaffer, should be disclosed to Defendants. (ECF No. 95.) For the reasons discussed herein, Plaintiff's motion compel is granted to the extent provided below and Defendants' cross-motion to compel is granted in part and denied in part.

## FACTUAL BACKGROUND

The Court and parties are familiar with the facts of the case and, therefore, only a brief recitation of the facts is contained herein. Plaintiff is the sole owner and proprietor of a web-based software product called DigTrack, which is a comprehensive tool that enables municipalities, utilities, pipelines, and contract locating firms to manage their dig tickets and other business operations, including billing and damage reporting. (ECF No. 94, at ¶¶ 15, 16, 21.) Plaintiff licenses DigTrack to its customers through a license agreement in which the customers agree to only permit use by authorized employees and to not provide log-in credentials to third-parties. (*Id.* at 28.)

Defendant Murphy is the president of Apex Data Solutions and Services, LLC, d/b/a/ "DigTix", which Plaintiff believes does business as "DigTix." (*Id.* at ¶ 34.) DigTix has been a direct competitor of Plaintiff since 2012. (*Id.*) Between January and September 2018, it is believed that Murphy accessed the "software as a service" platform DigTrack and the servers hosting DigTrack, using customer-supplied credentials to engage in an extended and systematic exploration of DigTrack's architecture, modules, overall functionality, and user interface purportedly to take that information to enhance the DigTix platform. (*Id.* at ¶¶ 37, 42, 45, 103.) During this time, three of Plaintiff's customers terminated their agreements with DigTrack, which prompted Plaintiff to conduct an internal investigation, including reviewing the customers' activity on the DigTrack platform. (*Id.* at ¶ 46.) Plaintiff discovered that a competitor may have been accessing its system and thereafter hired a forensic expert to further investigate the scope and extent of the unauthorized access and the harm sustained by such access. (*Id.* at 106.)

On February 20, 2019, Plaintiff served its First Set of Requests for Production and First Set of Interrogatories. (ECF No. 66-3.) On February 28, 2019, the parties entered into a Stipulated Protective Order ("Protective Order"), which was "So Ordered" by the Honorable Jonathan W. Feldman, Magistrate Judge, on April 9, 2019. (ECF No. 58.) Defendants served their Responses and Objections to Plaintiff's First Set of Interrogatories and First Set of Requests for Production on May 8, 2019. (Dec. of Matthew Ganas, executed on Sept. 17, 2019, ECF No. 66-2 at

3

1.) However, because Defendants' responses were marked as "Attorney's Eye's Only," they are not attached to Plaintiff's motion to compel. (*Id.*) Defendants served their Amended Responses and Ojbections to Plaintiff's First Set of Interrogatories and First Set of Requests for Production on June 7, 2019. (*Id.*) Similarly, because some of the responses were marked as "Attorney's Eyes Only," these objections and responses are not attached to Plaintiff's motion to compel. (*Id.* at 2.)

On May 8, 2019, Defendants served their First Set of Interrogatories to Plaintiff and First Request for the Production of Documents. (ECF No. 75-1, at 12; 75-2, at 20.) On July 17, 2019, Defendants received Plaintiff's discovery responses, which are not included in Defendants' motion papers as they were filed under seal. (ECF No. 75, at 2.)

After the parties attempted and failed to resolve alleged discovery deficiencies over a period of months, Plaintiff filed its motion to compel on September 17, 2019 (ECF No. 66) and Defendants filed their cross-motion to compel on October 4, 2019. (ECF No. 74.)

## ANALYSIS

*Plaintiff's Motion to Compel*

### A. Defendants' Financial Information (Interrogatory No. 6 and Request for Production Nos. 19 and 20)

The discovery demands at issue with respect to Defendants' financial information provide as follows:

> 6. From January 2016 through the present, provide the following on a monthly or quarterly basis: (a) the gross revenue earned by Apex from sales/licenses of DigTix ; (b) all variable expenses attributable to DigTix; (c) Apex's gross and net profit from sales/licenses of DigTix;

4

and (d) the costs incurred to develop DigTix, including, but not limited to, research and development costs.

(ECF No. 66-3 at 19.)

> 19. All documents concerning the costs incurred by Defendants in developing the DigTix system on a monthly or quarterly basis, including but not limited to labor, material, overhead, and consultant costs.
>
> 20. Documents sufficient to show Apex's revenues, cost of goods sold, variable expenses, fixed expenses, operating income, net income, and balance sheet on a monthly or quarterly basis.

(ECF 66-3 at 8.)

The parties acknowledged at the April 14, 2020, discovery conference with the Court ("Discovery Conference") that Defendants have produced documents, including spreadsheets, containing financial information. However, Plaintiff indicated that it is difficult to interpret the financial information provided. For this reason, Plaintiff indicated that it ultimately seeks a response to Interrogatory Number 6 so that it is provided with an explanation of the financial information received from Defendants.

At the Discovery Conference, Defendants represented that they already agreed they would issue a response to Interrogatory Number 6 in a manner that would aid Plaintiff in understanding the financial information they produced. For this reason, the Court finds in favor of Plaintiff with respect to its motion to compel a responses to Interrogatory Number 6 and finds as moot any dispute regarding Requests 19 and 20 contained in Plaintiff's Request for Production.

5

## B. Identification/Redaction of Defendants' Customers

The disagreement regarding this dispute stems from Plaintiff's Interrogatory Numbers 4 and 5 (as narrowed). These interrogatories "ask Defendants to identify (a) the customers using Digtix before Defendants' first unauthorized log-in to DigTrack, (b) the customers it acquired after the first unauthorized access, and (c) for each customer acquired after Defendants' first unauthorized access, the amount each customer is paying for the DigTix license." (Pl.'s Mem. of Law, dated September 17, 2019, ECF No. 66-1, at 7.) At the Discovery Conference, Plaintiff seemed to expand the scope of its request beyond simply seeking responses to Interrogatories 4 and 5, but also asserting that, to the extent documents are produced that are responsive to these interrogatories, the customer information should not be redacted as this information is necessary to build their case with respect to both liability and damages.

Plaintiff further asserts that it requires Defendants' entire customer list to be able to determine Defendants' market share since 2018, when the alleged misappropriations occurred. In addition, Plaintiff contends that it needs to be able to determine if any of Defendants' customers decided to retain Defendants' services as a result of a computer platform offering that Defendants would not have had but for their misappropriation of Plaintiff's trade secrets.

Defendants countered that Plaintiff knows which of its customers it lost to Defendants and Plaintiff admitted that it does. Defendants also indicated that they are wary of disclosing their customer list to a direct competitor and that they

should not have to provide a "meal ticket" to Plaintiff to be able to lure away Defendants' customers.

The Court finds that, to the extent that there are documents responsive to Interrogatories 4 and 5, Defendants shall provide unredacted documents related to customers that Plaintiff know left their services for Defendants' services.

With respect to those customers of Defendants whose identity is not known to Plaintiff, the Court directs Defendants to provide a list of its customers and unredacted documents related to those customers (if they are responsive to Plaintiff's discovery demands), with the designation of "Attorney's Eyes Only," to permit Plaintiff's expert to determine Defendants' market share and to further permit Plaintiff's attorney to determine liability and damages. This designation, as explicitly agreed to by the parties, does not permit disclosure to Plaintiff and because Defendants willingly negotiated and entered into the Protective Order, its argument of inadvertent disclosure is unpersuasive. Accordingly, Plaintiff's motion to compel responses to Interrogatories number 4 and 5 is granted with the stated limitations.

### *Defendants' Cross-Motion to Compel*

    **A.    Plaintiff's Designation of Its Trade Secrets as "Attorney's Eyes Only"**

The Court interprets this portion of Defendants' motion as a request to modify the Protective Order to permit Defendant Murphy to view Plaintiff's alleged trade secrets, which have been produced to Defendants, and which have been designated "Attorney's Eyes Only." Protective orders are governed by Federal Rule

7

of Civil Procedure 26(c), and may be granted or modified in order to prevent "annoyance, embarrassment, oppression, or undue expense." Modifying a protective order is a matter left to the "sound discretion of the trial courts." *In re Agent Orange Prod. Liabl. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987), *superseded in part by statute as noted in SEC v. TheStreet.com,* 273 F.3d 222, 233 n. 11 (2d Cir. 2001).

In addition, the Protective Order at issue specifically provides that "[n]othing in this Order abridges the right of any person to seek its modification by the Court or by agreement of the Parties in the future." (ECF No. 62, at 20.) In other words, the parties explicitly agreed that the Court, upon request of a party, has the authority to modify the Protective Order.

Interrogatory Number 4 contained in Defendants' First Set of Interrogatories asked Plaintiff to

> Describe with specificity exactly what [Plaintiff] claim[s] are [Plaintiff's] Trade Secret(s) which serve as the basis for this Lawsuit, including but not limited to any aspect, part, or module (as generally described in paragraphs 22–23 of the Complaint) of the DigTrack Program which are claimed to be Trade Secret(s), and any combination of features, systems, and architecture and/or user interface elements in the DigTrack Program which hare claimed to be Trade Secret(s).

(ECF No. 75-1, at 7.)

Defendants contend that Plaintiff provided a 100-page response describing its trade secrets and designated that response as "Attorney's Eyes Only." (Defs.' Mem. of Law, dated Oct. 4, 2019, ECF No. 76, at 8). Defendants assert that the "Attorney's Eyes Only" designation "prevents Defendants from knowing what

8

claims are being asserted against them," because they are "unable to view, and, to date, still have no knowledge of the very trade secrets that form the basis of the misappropriation claim being asserted against them." (*Id.* at 4–5, 8.) Defendants argue that the "Attorney's Eyes Only" designation prevents Defendants, and in particular Murphy, from being able to assist in their defense. (*Id.* at 8.)

In response, Plaintiff asserts that Defendants, including Murphy, willingly negotiated a Protective Order that provided for the "Attorney's Eyes Only" designation. (*See* ECF No. 62, at 12.) Indeed, the Protective Order specifically lists who will be able to access "Attorney's Eyes Only" material in paragraph 7.3. (*Id.*, at 12–13.)

Based upon the forgoing and discussions with the parties, the Court grants Defendants' motion to compel related to Interrogatory Number 4, directing Plaintiff to disclose to Defendants, and in particular to Murphy, the trade secrets it alleges he misappropriated thirty (30) days prior to the date of his deposition.

### B. Communications and Documents Exchanged with Jeffrey Shaffer

Request 36 of Defendants' Requests for Production sought "[a]ll documents and communications exchanged between Jeffrey Shaffer and any other person or entity referring, relating to or concerning the subjects of which he has knowledge as identified by Plaintiff in its Initial Disclosures" (ECF No. 75-2, at 11.) Defendants assert that Plaintiff disclosed Jeffrey Shaffer as a witness in its Rule 26(a)(1) disclosures because he was knowledgeable about Plaintiff's investigation into Defendants' access to the DigTrack platform. (Defs.' Mem. of Law, ECF No.

9

76, at 12.) For this reason, Defendants believe that they are entitled to take discovery and depose Mr. Shaffer.[2] (*Id.*)

During the Discovery Conference, Plaintiff's counsel confirmed it hired Mr. Shaffer's firm on behalf of Plaintiff when Plaintiff discovered that someone had accessed its platform without authorization. Plaintiff's counsel averred that his client has produced all responsive documents with respect to Mr. Shaffer, except for communications between his firm and Mr. Shaffer. Plaintiff's counsel further represented that the withheld communications with Mr. Shaffer do not involve factual allegations that were utilized in Mr. Shaffer's analysis.

The Court accepts Plaintiff's counsel's representations that Plaintiff has provided all discoverable information regarding Mr. Shaffer to Defendants. The Court further accepts Plaintiff's counsel's representation that the communications with Mr. Shaffer that have not been produced did not include any discussions of the underlying facts to aid Mr. Shaffer in his analysis such that they would be discoverable.[3] For these reasons, Defendant's motion to compel documents and communications involving Mr. Shaffer, as contained in Request 36 of Defendants' Request for Production, is denied.

---

[2] During the Discovery Conference, Plaintiff's counsel asserted that Plaintiff does not oppose Mr. Shaffer being deposed by Defendants but that he has never received a notice of deposition.

[3] *Heard v. Statue Cruises LLC*, No. 16-CV-1079 (ALC) (BCM), 2020 WL 1285456. *7 (S.D.N.Y. Mar. 18, 2020) ("Communications regarding the expert's compensation, the 'facts or data' that the expert considered, or the assumptions that the expert relied on, however, remain discoverable.") (citing Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii)).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion compel is granted to the extent provided and Defendants' cross-motion to compel is granted in part and denied in part.

**IT IS SO ORDERED.**

DATED: April 17, 2020
        Rochester, New York

                                            MARK W. PEDERSEN
                                            United States Magistrate Judge